| 57 | 31 |
| 76 | 300 |
| 76 | 613 |

EDWARD N. PIERCE AND OTHERS *vs.* JENNIE A. ROBERTS
AND OTHERS.

New Haven Co., June T., 1888.  PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

*J, O & M* owned in fee a tract of land on the seashore, and laid it out in
cottage lots, bounded on one side upon the water and on the inside
upon an elliptical half acre with a drive-way around it, which was mark-
ed "Park" upon a map which they procured to be made. They sold a
large number of lots to the plaintiffs and others, and in the negotiations
called attention to the map, and stated that the part marked "Park"
was not to be sold but to be kept open for all the lot-owners; and the
purchasers took the lots upon the inducement of these representations
and paid a greater price on account of them. The plaintiffs had
erected cottages on the lots so purchased by them. All the deeds con-
tained, in addition to a description of the lot conveyed, a reference to
the map as to be placed on file in the town clerk's office; and the map
was soon after placed on file there. The lot marked "Park" was after-
wards sold to *W*, who knew all the facts. In a suit by the plaintiffs for
an injunction against the erection of buildings on this lot by *W*, in which
*J, O & M* were also made defendants, it was held.

1. That *W*, knowing of the agreement with the plaintiffs when he pur-
   chased, could have no greater rights than *J, O & M* would have had.
2. That the representations made by the latter as to the space to be kept
   for a park, were not merged in the later written contract of the deeds.
3. That if it were so, the deeds, by their reference to the map, made it an
   inseparable part of the description of the property conveyed.
4. That the statute (Gen. Statutes, § 81), which provides that where a map
   is filed in the town clerk's office and referred to in a deed, it shall be
   deemed part of the deed, is merely declaratory of the common law.
5. That the declarations of the grantors were admissible, independently of
   the deeds, to prove a dedication of the park.
6. That it was no objection that the plaintiffs had not alleged a dedication
   in their complaint. They had alleged all the facts relied on, and it
   was not necessary to allege their legal effect.
7. That, besides this, the representations of the grantors operated as an
   estoppel against their denial that the land in question was a park, in-
   dependently of their effect as evidence of a dedication.
8. That the declarations of one of the joint grantors were admissible to
   affect the others.
9. And that they were admissible against *W* their grantee, as he took his
   deed after the declarations were made.
10. That a declaration of one of the grantors before the deeds were given,
    not made in the presence of the plaintiffs, that he did not intend to
    dedicate the piece for a park unless the lot-owners would buy it for

that purpose, was not admissible against the plaintiffs, because, while such declarations might be admissible to rebut a presumption of a dedication from user, yet here the dedication was an express one, which had its origin in the sale of the lots to the plaintiffs, and the grantors were estopped from denying the dedication.

[Argued June 19th—decided July 20th, 1888.]

SUIT for an injunction; brought to the Superior Court in New Haven County, and heard before *Andrews, J.* The plaintiffs were Edward N. Pierce, William W. Carter, George Merriman and Catherine R. Root; the defendants were Jennie A. Roberts, M. Josephine Roberts, Orlistus L. Roberts, and Lawson J. Wooding. The facts were found by the court and a permanent injunction granted. The defendants appealed. The case is fully stated in the opinion.

*L. N. Blydenburgh,* for the appellants.

It is claimed by the plaintiffs that a part of the defendants sold them certain building lots at Sachem's Head, and at the time of the sale, and before, represented that a certain adjoining tract of land should forever be kept open for a public park; and that afterwards the other defendant bought of them this land, and proposes to use it as his own. Such sale to the defendant Wooding, after the representations mentioned, is the plaintiffs' grievance in this case.

This claim of the plaintiffs, as to the representations, is unsupported by anything in their deeds, for in neither of them is the land in dispute mentioned. Their description of the land sold and that which the grantee is to derive title to, stops sixteen feet from the "park," the width of the road laid out for the convenience and use of the cottages and the public. It is true that a map was made of "Sachem's Head" and left in the town clerk's office in Guilford, but the only connection between the map and the deeds is that in the deeds the description of the land sold is made certain by saying that it is a certain lot on the map. There is nothing therefore in the deeds, or in the map, or in both together, to support the claims of the plaintiffs in this case. Nothing which would give notice to a stranger that a pur-

chase of the "park" would infringe upon the rights of owners of the lots deeded.

The deeds are presumed to contain the complete contract. No allegation of fraud, mistake or ambiguity is made. From the contract of sale therefore, as a contract simply, the plaintiffs can take nothing but the lot called for by the deeds.

The complaint does not allege a dedication as we understand it, but if it does, do the facts found amount to a dedication? The map made a part of the finding will show that some one wrote in pencil upon the lot in dispute the word "park." This fact does not appear in the printed record, but an inspection of the map will show it. This pencil mark, evidently not a part of the original draft, is all the written evidence which the plaintiffs can find and all that the finding will disclose.

When these deeds were drawn and accepted, the law said, as it says to-day, "Write what you want, for you get what you write and nothing more." It is a just and prudent rule. When an agreement is reduced to writing, all previous negotiations, resting in parol, are resolved into and extinguished by the writing. This rule is too well settled to require the citation of authorities.

We believe that to support the judgment it must be found—first, that the complaint alleges a dedication; second, that the facts found amount to a dedication. It surely does not allege a dedication, but simply that it was represented that it would be kept for a certain use. The finding that it was so represented is not enough. It must have have been so *intended*, and not simply by one owner but by all. That it was so intended the court fails to find. If one of the owners made the representations as to the future use of this land, it could not amount to a dedication by the others. It was in fact so that the only evidence in the case was that Orlistus Roberts made certain statements, which he denied making. No evidence was offered of anything said by the sisters, and the court assumes in the finding to charge them with the representations of the other owner.

The intention of the owner of the soil to dedicate it to public use ought to be clear, manifest and unequivocal, and there must be an acceptance of it on the part of the public. *Sherwood* v. *Weston*, 18 Conn., 51; *Curtis* v. *Hoyt*, 19 id., 169; *Riley* v. *Hammel*, 38 id., 575; *Guthrie* v. *New Haven*, 31 id., 321.

If evidence of the defendants' declarations was admitted, the evidence of Orlistus Roberts's declaration that it would be a park if the plaintiffs bought it for such use, was admissible. On the question of intent, evidence of his conduct and declaration should have been heard.

*E. H. Rogers*, for the appellees.

Loomis, J. The three defendants, Jennie A., Orlistus L. and M. Josephine Roberts, in June, 1882, and before that time, were the owners in fee of a piece of land called Sachem's Head, a favorite summer resort on Long Island Sound in the town of Guilford; and to induce summer visitors to purchase the same and erect cottages thereon, they caused all the land to be surveyed and laid out into cottage lots, so that each lot on one side bounded on the waters of the Sound and on the interior side on a circular drive-way or road sixteen feet wide, which left a piece of land in the center resembling an ellipse in shape, containing half an acre. There were twenty-two of these lots laid out, numbered consecutively from one to twenty-two. A map of the lay-out was carefully prepared under the direction of the defendants by Charles Griswold, a surveyor, which clearly exhibited all the lots with their numbers, and their exterior lines abutting on the water and their interior lines abutting on the circular drive-way, with the elliptical piece in the center, which was marked "Park," and the roadway also marked as such. This map was designed to be shown to the purchasers of lots and to be filed in the town clerk's office in Guilford as a permanent description of the lots and their surroundings.

During the month of June, 1882, each of the plaintiffs, or

those under whom they claim, purchased of the defendants one or more of the lots, and during the negotiations resulting in the purchases, the defendants called the particular attention of the plaintiffs to the map, and to the arrangement of the lots, and to the road and the reserved space inside the road, which the defendants asserted was not to be sold, but to be kept open for the benefit of all the persons who might own the lots ; and it is found that these representations were made by the defendants for the purpose of inducing the plaintiffs to purchase their respective lots, and that they did so purchase solely on the strength of such representations and paid for their several lots a greater price on that account.

Each of the plaintiffs has erected a cottage on the lot so purchased by him or her, and it is further found that if the park should be inclosed and built upon, it would lessen the value of the plaintiffs' lots from twenty to thirty per cent.

The defendants, Jennie A., Orlistus L. and M. Josephine Roberts, on the 20th day of June, 1882, made, executed and delivered warranty deeds—one to the plaintiff Pierce, of lots numbered four and five ; one to the plaintiff Carter, of lot number six ; one to Joel H. Root, then in life, but since deceased, of lot number seven, which lot is now owned by the plaintiff Catherine R. Root ; and one to George and Theodore D. Merriman, of lot number eight, which lot is now owned solely by the plaintiff George Merriman. Each of the deeds contained a description of the land conveyed by bounds, courses and distances, and concluded with a reference to " a map of the premises made out and surveyed by Charles Griswold, which map is to be placed on file in the town clerk's office of said town of Guilford."

Soon after the delivery of the several deeds the map was placed on file in the town clerk's office, where it has since remained. The park has always been kept open and unobstructed, and used as a public park, until the defendants Jennie A., Orlistus L. and M. Josephine Roberts made, executed and delivered a deed of the same to the other defendant, Lawson J. Wooding, to hold as his absolute property,

who had at the time and previously full knowledge of the agreements made by the other defendants with the several plaintiffs, and who now threatens to erect buildings on the land and destroy its use as a park. Upon complaint of the plaintiffs the Superior Court, after hearing the parties and finding the facts substantially as stated, granted the injunction prayed for, restraining the defendants and each of them from erecting or placing any building or structure of any kind on the park, and from selling, conveying or leasing the same or any part, and from interfering with or destroying the use of the land as a public park. The defendants by their appeal to this court seek to set aside this judgment on account of certain alleged errors in receiving or rejecting evidence.

The defendants contend that notwithstanding the defendant Wooding had knowledge of the agreement between the other defendants and the plaintiffs, yet he took a good title under his deed because he had a right to assume that the plaintiffs had no other title than their deeds gave them, and by those deeds no right or title whatever to the park was conveyed, and that the plaintiffs' rights under their deeds did not extend beyond the roadway which separated their respective lots from the piece on the other side designated as a " park." And upon this foundation the defendants objected to all parol evidence of representations made by the defendants to the plaintiffs to induce the purchase of the lots, invoking in this connection the legal principle that when an agreement is reduced to writing all previous negotiations resting in parol are resolved into and extinguished by the writing. They also claimed that the agreement and declarations of the defendants relative to the reservation of the land in question for a park were improperly received to show a dedication of the land for a park, because the complaint did not allege a dedication. This summarizes the principal questions which the appeal brings before this court for review.

We think every position here taken and the argument in

its support wholly untenable, being either unsound in principle or erroneous in application.

In the first place, the word "park" on the map cannot be eliminated from the deeds, but is, on the contrary, an inseparable part of those deeds, and thereby the grantors are estopped from appropriating the land in question to a use inconsistent with such designation.

The same argument that would give no force and effect to the plan and designation "park" on the map referred to, would also virtually nullify the effect of the plan and designation of the "road." It would however doubtless be conceded that as to the latter the deed alone, in connection with the map, would constitute an irrevocable dedication of that space to public use, although there is no grant or covenant in the deed to that effect. Why not give like effect to the plan and designation of the "park"? That surely is a prominent and attractive feature of the plot, and indeed essential to its completeness. The lots for sale were all numbered in order from one to twenty-two. The center piece contained no number to facilitate selection by a purchaser, but on the contrary it was given a name which in itself imported a design to set it apart and reserve it for the common benefit of all. Now although the defendants stoutly insist that the terms of the deed must not be varied by extrinsic evidence, yet virtually by their conduct and their claims they would erase from the map, which constitutes a part of the deeds, the name "Park," and insert in its stead, "Grantors' lot," or, "Wooding's lot."

But are we right in holding the map to be an essential part of the deeds? A statute enacted in 1867, now constituting section 81 of the General Statutes, provides in substance "that where land is surveyed and mapped, and the map is filed in the town clerk's office, where the land is situated, such map shall be deemed part of the deeds referring thereto." This statute however seems to have been declaratory of the common law, for in *Derby* v. *Alling*, 40 Conn., 410, this court, in construing a deed which antedated the statute some seventeen years, held that where the land was

described as bounded by a street not expressly defined in the deed, but shown upon a plan therein referred to, the grantor was estopped to deny the existence, not only of that street, but of all the connecting streets delineated upon the same plan as far as the grantor's land extended; and that where a plan is referred to in a deed for a description of the estate conveyed, not only the courses and distances, but all other particulars upon that plan, are to be regarded as if they had been expressly recited in the deed.

A large number of adjudications, in cases quite similar to the one at bar, might be cited from the reports of other states strongly supporting our position. A reference to a few of these cases will suffice.

In *Price* v. *Inhabitants of Plainfield*, 11 Vroom, 608, it was explicitly laid down as a definite rule of law, that where a land-owner had caused a map of land to be filed in the county clerk's office, on which streets and building lots were delineated, and one block was set apart and marked with the word " park," and when such land-owner had subsequently made conveyances of sundry of such lots to various purchasers, such conduct was conclusive evidence of a dedication of the parcel designated " park." And the same principle was re-affirmed in another similar case by the same court in *Mayor & Council of Bayonne* v. *Ford*, 43 N. Jersey Law, 292, where a grantor by the name of R. Graves plotted a tract of land for building lots, and a small section on the plot was marked, " Annette Park, now belonging to R. Graves," it was held, notwithstanding the assertion of ownership, that it had become a public park by dedication.

In *San Leandro* v. *Le Breton*, 72 Cal., 171, it was held that " where an owner of land lays off a town or village thereon, and makes a map of the town site showing it to be divided into streets, etc., and then sells lots with reference to such map, he thereby makes an irrevocable dedication of the space represented on the map as streets to the use of the public, and if there be squares or plazas represented on the map the same rule applies to them.

In *Rowan's Executors* v. *Portland*, 8 B. Monroe (Ky.),

232, MARSHALL, C. J., giving the opinion of the court, said, on page 237: "The right which, as we suppose, passes to the purchasers of lots as appurtenant thereto, is not the mere right or privilege that each purchaser may use the streets and other public places, according to their appropriate purposes, but the right acquired by each purchaser that all persons whosoever, as their occasions may require or invite, may so use them; or in other words, we suppose the sale and conveyance of lots in the town according to its plan imply a grant or covenant to the purchasers that the streets and other public places indicated as such on the plan shall be forever open to the use of the public free from claim or interference of the proprietor inconsistent with that use."

In *Fisher* v. *Beard*, 32 Iowa, 346, it was held that " where the owner of lands lays out a town thereon and sells lots to purchasers with reference to the plat thereof, the purchaser of such lots acquires as appurtenant thereto a vested right in and to adjacent grounds designated on such plat as public grounds, to the full extent that such designation imports; and a diversion of the same from such purpose by the proprietor will be restrained by injunction at the instance of a purchaser.

These decisions and the reasons by which they are supported seem to demonstrate that the written evidence alone was sufficient to sustain the plaintiffs' claim for an injunction, and if so, the rulings of the court as to the admission of the parol evidence, even if erroneous, could have done the defendants no harm. We wish however to avoid any implication that, aside from the deeds, the defendants' representations were not admissible to prove and establish a public park by express dedication. Indeed, the defendants, having by their representations respecting the park intentionally induced the plaintiffs to make the purchase, and having even in effect accepted compensation from the plaintiffs for the surrender of this land for the use of a public park, are now estopped from claiming otherwise.

As to the alleged omissions in the complaint, it is suffi-

cient to say that the precise facts relied upon were alleged in paragraph twelve. The legal effect of those facts, whether constituting an estoppel or a dedication, was not required to be alleged.

In regard to the defendant Wooding it is hardly necessary to say that, having purchased the park with full knowledge of the deeds and all the material facts, he has no better right than the other defendants.

There are two other questions relative to the admission of evidence to which we will briefly allude, although they might be disposed of upon the ground, as previously suggested, that the written evidence alone amply justified the granting of the injunction.

The defendant Orlistus L. Roberts, after the date of the plaintiffs' deeds, and prior to the deed to the defendant Wooding, in conversation with sundry persons, in substance admitted that, at the time the plaintiffs contracted with him and the defendants, Jennie A. and M. J. Roberts, for the purchase of the lots conveyed to them, it was agreed that the land inside the road-way should be reserved for a park. This evidence was admitted by the court against a general objection by the defendants.

The declarations of course were admissible, upon the most familiar principles, against the party who made them, but it is assigned for error that the court received the evidence to affect the other defendants also. The purpose for which the evidence was received nowhere appears, but assuming that it was so received, it was the case of the admission of one of several joint contractors in respect of the joint contract in question, entered into by all, and the rule of evidence that makes such an admission evidence against all the joint contractors has been too often recognized and applied by this court and by courts of other states to require the citation of any of the numerous authorities on that subject; and as the defendant Wooding, subsequent to these declarations, derived his title under these same joint parties, with full knowledge of the rights and claims of the plaintiffs, it is equally clear upon the

Pierce *v.* Roberts.

authorities that the declarations of his grantors were admissible also against him.

The remaining question is stated in the finding as follows:—"The defendants offered to prove that about the time the map was made, O. L. Roberts declared that he did not intend the piece of land to be a park unless the lot owners would buy it for that purpose. It was admitted that such declaration was not made in the hearing of any of the plaintiffs, and that it never came to their knowledge. The plaintiffs objected to this testimony and it was ruled out." There are several independent grounds upon which the ruling of the court may be vindicated.

In the first place, as already stated, a dedication was conclusively effected by the deeds in connection with the map and its filing in the town clerk's office. But we prefer to meet the question directly, because the case as presented in the complaint and as tried in the court below was based on two distinct grounds—first, the deeds and map, and second, parol representations which constituted a dedication or an estoppel in pais. It is only in reference to the latter kind of dedication that the defendants claim that the evidence should have been received, to show that there was no intent on the part of O. L. Roberts to dedicate this land for the purposes of a park. Although all self-serving declarations, not parts of the *res gestae*, as a general rule are to be excluded, yet there might be cases of dedication claimed simply on the ground of public user where such declarations under some circumstances might be received to rebut the presumption that such use was in accord with the land-owners' intent.

But the question in this case was of a very different character. No dedication was claimed based on user. It was an express dedication, which had its origin in the sale of these lots to the plaintiffs. If the agreement was as the plaintiffs claimed and as the court has found, the defendants were estopped from denying the dedication. The declarations of Roberts on another occasion and at a different time and in the absence of the plaintiffs, did not affect in the

slightest degree the claim of the plaintiffs on which they relied.

The time when this declaration was made should also be noted. The finding is simply that it was "about the time the map was made." The map is found to have been made "in the first part of June," while the deeds were not made till the 20th of that month. The claimed declaration of Roberts therefore, it would seem, must have been anterior to the agreement relied upon by the plaintiffs. As no dedication was claimed till that time, the evidence offered was not even inconsistent with the plaintiffs' claim. Roberts only said that he did not intend the land for a park unless the lot-owners would buy it for the purpose. Before the deeds were made to the plaintiffs he might have altered his mind or have concluded, as it seems he did, to throw this park in, as an inducement to purchasers, and thus virtually sell it to them, as it is found he did, by adding to the price of the lots on that account.

There was no error in the rulings and judgment complained of.

In this opinion the other judges concurred.