AUNT HACK RIDGE ESTATES, INC. *v.* PLANNING COMMISSION OF THE CITY OF DANBURY ET AL.

ALCORN, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued October 8—decided December 1, 1970

*Louis A. DeFabritis,* for the plaintiff.

*Robert N. Talarico,* assistant corporation counsel, with whom, on the brief, was *Richard L. Nahley,* for the defendants.

ALCORN, C. J.   The plaintiff submitted a plan for a subdivision to the defendant commission which it refused to approve because the plan did not provide an open space for a park or playground.   The plain-

tiff brought this action in the Superior Court seeking a declaratory judgment and ancillary injunctive relief. The questions to which answers are sought are: (1) "Whether Section 2.3 of the Regulations of the Planning Commission of the City of Danbury is unconstitutional"; and (2) "Whether that portion of Section 8-25 of the Connecticut General Statutes, which pertains to open spaces for parks and playgrounds, which is quoted . . . in the Stipulation of Facts, is unconstitutional." The case comes to us on a reservation by the Superior Court on stipulated facts.

The plaintiff acquired about 275 acres of undeveloped land in Danbury in 1958. The regulations of the planning commission of the city of Danbury then in force did not require that a subdivision plan show an area for a park or playground. In 1965, § 2.3 of the subdivision regulations was adopted, the material portion of which provides: "The Commission may require that a plan of subdivision show an area for park or playground. Such an area, if required, shall be at a rate of not more than four percent of the total area to be approved for subdivision, but not less than 10,000 square feet. The area shall, in the opinion of the Commission, be suitable for recreational use and located so as to fit in with a city wide recreation plan; it may be required to be contiguous with open spaces of neighboring subdivisions. It shall in all cases be available and accessible to all residents of the subdivision." Thereafter, on April 3, 1968, the plaintiff submitted a plan for a subdivision containing eleven lots which was complete in all respects except that the plaintiff refused to, and did not, comply with the requirement that an area for a park or playground be set aside pursuant to the quoted section of the regulations.

The commission denied the plaintiff's application for a subdivision because the plan submitted did not make provision for a park or playground area.

Section 2.3 of the planning commission's regulations was adopted pursuant to § 8-25 of the General Statutes. The plaintiff claims that § 8-25 as it pertains to open spaces for parks and playgrounds is unconstitutional because it is vague and uncertain, lacks required standards, is an arbitrary and discriminatory abuse of the police power and amounts to an unauthorized tax for the use of the land. It claims that § 2.3 of the regulations is unconstitutional because it is vague and uncertain, lacks required standards, amounts to a taking of private property for public use without just compensation, is a deprivation of property rights without due process of law, is an arbitrary and discriminatory abuse of the police power and exceeds the legislative authority for its enactment.

A statute is not to be held unconstitutional unless its invalidity on that ground is established beyond reasonable doubt. *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49. When the statute will serve to further the welfare of the citizens of the state, we must make every intendment in its favor. *Legat* v. *Adorno,* 138 Conn. 134, 145, 83 A.2d 185. "Municipal planning is designed to promote, with the greatest efficiency and economy, the co-ordinated development of the municipality and the general welfare and prosperity of its people." *Kiska* v. *Skrensky,* 145 Conn. 28, 32, 138 A.2d 523. Section 8-25 is a part of chapter 126 of the General Statutes, which provides in general for the creation and functioning of municipal planning commissions. Section 8-23, which is also a part of chapter 126, authorizes a planning commission to adopt and amend a plan of

development for the municipality embodying the commission's recommendation for the most desirable use of land, the most desirable dispersal of the density of population and, among other things, provision for streets, parks, playgrounds and utilities. The plan is required to be "based on studies of physical, social, economic and governmental conditions and trends and shall be designed to promote with the greatest efficiency and economy the coordinated development of the municipality and the general welfare and prosperity of its people." In short, the obvious legislative purpose disclosed by § 8-23 is to provide an agency to plan the coordinated development of the municipality in anticipation of changed conditions. *Corona's Auto Parts, Inc.* v. *Zoning Board of Appeals,* 158 Conn. 244, 248, 259 A.2d 618. To that end chapter 126 continues with the provision in § 8-25 that no subdivision of land shall be made until a plan for such subdivision has been approved by the municipal planning commission, and it confers on the planning commission the power to adopt regulations covering the subdivision of land. Section 8-25 then directs that "[s]uch regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety," that provision be made for drainage, sewerage and flood control, the grading and improving of streets and the furnishing of the necessary public utilities. The section also provides that "[s]uch regulations shall also provide that the commission may provide open spaces for parks and playgrounds when, and in places, deemed proper by the planning commission, which open spaces for parks and playgrounds shall be shown on the subdivision plan." In these days of burgeoning popula-

tions, critical housing problems and the incentive which they create for the activity of land developers, the need for parks, recreational areas and open space for the welfare of people looms large. Planning commission recommendations for recreational purposes, for controlling the density of population and for parks and playgrounds would be of little value if, as open spaces are built upon, reasonable provision to accomplish those purposes could not be required. "All property is held subject to the right of the State to reasonably regulate its use." *State* v. *Kievman,* 116 Conn. 458, 463, 165 A. 601. Chapter 126 of the General Statutes has for its clear purpose such regulation in the public interest and its § 8-25 is obviously designed to implement that purpose. There can be no question that § 8-25 specifically empowers the commission to make provision in its regulations concerning open spaces for parks and playgrounds. Nor can there be any doubt that the regulations which are authorized are designed to implement the commission's planning, which "shall be based on studies of physical, social, economic and governmental conditions and trends and shall be designed to promote with the greatest efficiency and economy the coordinated development of the municipality and the general welfare and prosperity of its people." § 8-23.

Where a statute declares a legislative policy, establishes primary standards for carrying it out and lays down an intelligible principle to which an administrative body must conform, it may authorize the administrative body to fill in the details by prescribing rules and regulations for the enforcement of the statute. *Roan* v. *Connecticut Industrial Building Commission,* 150 Conn. 333, 340, 189 A.2d 399; *Jennings* v. *Connecticut Light & Power Co.,* 140

Conn. 650, 670, 103 A.2d 535; *State* v. *Stoddard,* 126
Conn. 623, 628, 13 A.2d 586. It is clear that the Dan-
bury planning commission can exercise only the
powers which are expressly granted to it by statute
or such as are necessary to enable it to discharge
the duties and carry out the objects and purposes of
its creation. *Baker* v. *Norwalk,* 152 Conn. 312, 314,
206 A.2d 428. Nevertheless, as the United States
Supreme Court has said, the legislative process
would frequently bog down if the General Assembly
"were constitutionally required to appraise before-
hand the myriad situations to which it wishes a
particular policy to be applied and to formulate
specific rules for each situation." *American Power
Co.* v. *Securities & Exchange Commission,* 329 U.S.
90, 105, 67 S. Ct. 133, 91 L. Ed. 103. Obviously, the
General Assembly could not prescribe in detail for
the countless conditions which might confront the
planning commissions in the state's many cities and
towns. "As the complexity of economic and govern-
mental conditions increases, the modern tendency is
liberal in approving broad regulatory standards so
as to facilitate the operational functions of admin-
istrative boards or commissions." *Forest Construc-
tion Co.* v. *Planning & Zoning Commission,* 155
Conn. 669, 679, 236 A.2d 917. In the light of the
conditions to be met by the planning commission in
carrying out its functions under chapter 126, § 8-25
cannot be said to be unconstitutional for vagueness
or lack of standards to implement it.

The plaintiff also attacks § 2.3 of the commission's
regulations on the ground that it lacks the requisite
specificity and exceeds the legislative authority for
its enactment. The principle that a regulation, like
a statute, cannot be too general in its terms is clear.
*Powers* v. *Common Council,* 154 Conn. 156, 160, 222

A.2d 337; *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 668, 154 A.2d 520. Nor may it exceed the authority given by the statute under which it is adopted. *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 236, 215 A.2d 409. The present regulation provides for a minimum park or playground area of 10,000 square feet or, in other words, a square which might be 100 feet on a side, and a maximum area of four percent of the total area of the subdivision. It must be suitable for recreational use, it must be so located as to fit in with a city-wide recreation plan, it may be required to be contiguous to open spaces of neighboring subdivisions, and it must be available and accessible to all residents of the subdivision. These requirements are clear and sufficiently specific, and the regulation does not exceed the authority conferred in § 8-25.

The plaintiff attacks both the statute and the regulation for vagueness on the ground that each fails to set forth the legal status of the park or playground area which is required to be set aside. It has long been the law in this state that when conveyances are made by reference to a map or plot, each grantee to whom the conveyance is made acquires a private right or easement in a park or other open area delineated on the map or plot. *Pierce* v. *Roberts,* 57 Conn. 31, 37, 17 A. 275; *Fisk* v. *Ley,* 76 Conn. 295, 300, 56 A. 559; see also *Park Construction Co.* v. *Planning & Zoning Board of Appeals,* 142 Conn. 30, 39, 110 A.2d 614. We note in passing that § 81 of the Revision of 1888, which is referred to in the *Pierce* case, is, in its material part, with additions not now of consequence, § 7-31 of the General Statutes. We need not consider the status of the title because neither the statute nor the regulation could be held to be unconstitutionally vague for

failure to state where the title lies. There is nothing in this record to indicate that the ordinary rules as to title would not prevail in such conveyances as might be made.

The plaintiff attacks both the statute and the regulation adopted under it on the ground that they constitute an arbitrary abuse of police power and amount to a taking of private property for public use without the payment of just compensation. To constitute a valid exercise of police power, both the legislation and the regulation must, of course, have a rational relation to the public welfare and must be reasonable and impartial. *Teuscher* v. *Zoning Board of Appeals,* 154 Conn. 650, 658, 228 A.2d 518; *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327; *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 616, 124 A.2d 881; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 671, 103 A.2d 535; *Corthouts* v. *Newington,* 140 Conn. 284, 288, 99 A.2d 112; *Gionfriddo* v. *Windsor,* 137 Conn. 701, 704, 81 A.2d 266. The fact that the exercise of the police power prevents the enjoyment of certain individual rights in property without providing compensation therefor does not necessarily constitute a taking of the property without just compensation. *Troiano* v. *Zoning Commission,* 155 Conn. 265, 267, 231 A.2d 536; *DePalma* v. *Town Plan Commission,* 123 Conn. 257, 267, 193 A. 868; *State* v. *Kievman,* 116 Conn. 458, 466, 165 A. 601; *State* v. *Hillman,* 110 Conn. 92, 104, 105, 147 A. 294; *Windsor* v. *Whitney,* 95 Conn. 357, 367, 111 A. 354.

The test which has been generally applied in determining whether a requirement that a developer set aside land for parks and playgrounds as a prerequisite to the approval of a subdivision plan is whether the burden cast upon the subdivider is

specifically and uniquely attributable to his own activity. Where the requirement is uniquely attributable to the subdivider's activity, it has been held to be a permissible exercise of the police power. *Billings Properties, Inc.* v. *Yellowstone County,* 144 Mont. 25, 394 P.2d 182; *Jenad, Inc.* v. *Village of Scarsdale,* 18 N.Y.2d 78, 218 N.E.2d 673; *Jordan* v. *Menomonee Falls,* 28 Wis. 2d 608, 137 N.W.2d 442.

The cases just cited hold that a requirement that the developer dedicate open space to the public is valid on the ground that the burden imposed on him is uniquely attributable to his own activity because the increase in population in the area which will result from that activity is productive of the need for open space. It is to be noted that in both the *Jenad* and *Jordan* cases the court also sustained a requirement that the developer pay a sum of money to the municipality as an alternative to providing open space. Other jurisdictions have frowned upon a requirement that a subdivider make a cash payment in lieu of providing land for parks or open space. In *Haugen* v. *Gleason,* 226 Ore. 99, 359 P.2d 108, the basis of the decision was that the required fee was not limited to the direct benefit of the particular subdivision. Still other cases have held the requirement imposed by the regulation to be invalid on the ground that it was beyond the scope of the enabling statute. *Coronado Development Co.* v. *McPherson,* 189 Kan. 174, 368 P.2d 51; *Gordon* v. *Village of Wayne,* 370 Mich. 329, 121 N.W.2d 823. All of the cases from other jurisdictions to which we have alluded are clearly distinguishable from both the statute and the regulation with which we are concerned. Neither the statute nor the regulation here involved goes as far as those involved in

any of the cases referred to, because they do no more than provide that a developer may be required to set aside a park or playground area in his proposed subdivision.

It is clear that the requirement which is cast upon the plaintiff by the regulation and statute with which we are concerned is uniquely and solely attributable to its activity in undertaking to establish a subdivision. Engaging in the activity is left to its own choice. When it undertakes to subdivide, the population of the area is necessarily increased and the need for open space for its people becomes a public one. Moreover, when it chooses to subdivide the land, the open space requirement renders the lots offered for sale more attractive and desirable to purchasers, a circumstance of value to the seller. One of the stipulated facts in this case is that "[a]t the time of the purchase of the property in question by the plaintiff, the projected cost of development of the acreage under the regulations then in force in Danbury could not have included the cost of setting aside land for park or playground purposes." The plaintiff argues that § 2.3 of the regulations, subsequently adopted, is an arbitrary exercise of the police power because it, in effect, imposes a "tax" on or confiscates for public use the portion of his property required to be set aside for a park or playground. Basically, however, the complaint is that the plaintiff should be able to assert an individual interest in filling the entire area with housing as superior to the public interest in maintaining a more healthful open space environment. For the reasons already discussed, the public welfare must be paramount.

We hold that the statute and the regulation are valid and constitutional exercises of the police

power. *Billings Properties, Inc.* v. *Yellowstone County,* supra; *Jenad, Inc.* v. *Village of Scarsdale,* supra; *Jordan* v. *Menomonee Falls,* supra.

To both questions in the reservation we answer, "No".

In this opinion the other judges concurred.