[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
These consolidated actions arise out of the decision by the defendant Southbury Planning Commission (commission) to amend a section of its subdivision regulations. The first action is an administrative appeal[1]
brought by the plaintiff Hardy Farm Limited Partnership (Hardy) under General Statutes § 8-8. In this action, Hardy claims to be aggrieved by the commission's decision amending the subdivision regulation and contends that the amendment constitutes an illegal, arbitrary, or abusive use of the commission's discretion. The second action is instituted by the plaintiffs Hardy and other land owners seeking a declaratory judgment that the amended subdivision regulation is an illegal, invalid, and unconstitutional violation of their rights as owners of land in the affected zone.[2] On January 19, 2001, this court granted uncontested motions to consolidate these two cases for trial and discovery purposes and held trial proceedings on these consolidated matters.
The following facts are undisputed. On April 27, 1999, the commission held a public hearing on its application to amend § 4.18.3 of the town's subdivision regulations.[3] The only proposed amendment to this section was to change from 10% to 15% the amount of total area of a subdivision to be reserved for open space. At its meeting on May 18, 1999, the commission, by unanimous vote, adopted the amendment as proposed. Both the hearing and decision received proper publication notice. "Section 4.18.3 of the Southbury subdivision regulations provides the commission the discretion to deviate from the 15% open space requirement when one or more of the following conditions exist: "a. adequate existing parks, playgrounds, recreation areas and open spaces area available in the neighborhood; b. there is no land in the subdivision suitable for such reservation; and/or c. the minimum reservation area would be less than one (1) acre."
At the hearing on these cases, the court received evidence from Myron CT Page 5939 Hardy, general partner of plaintiff Hardy Farm Limited Partnership, and several of the other plaintiffs in the declaratory judgment action.[4]
From this evidence, the court makes the following findings. Hardy Farm Limited Partnership owns real property consisting of 200 acres of farm and forest land situated at 403 West Purchase Road, Southbury. The other plaintiffs in the declaratory judgment action also own large tracts of real property within Southbury. These properties are in the form of undivided woodlands, farmlands or some combination thereof. Under the town's zoning regulations, the plaintiffs' properties are capable of subdivision and are located within an R-80 district, which is zoned for single family residences. Pursuant to the parties' stipulation, the court also finds that none of the plaintiffs have yet filed applications to subdivide any of their parcels.
The preliminary issue that the court must address concerns the court's jurisdiction over these two actions. In the administrative appeal, the issue is whether Hardy has been aggrieved by the commission's action. In the declaratory judgment action, the parallel issue is whether the plaintiffs have standing to maintain the action.
 DISCUSSION I
Aggrievement and Standing
As to Hardy's zoning appeal, "pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 672 A.2d 831 (1996); see also General Statutes §8-8 (a). "The burden of demonstrating aggrievement rests with the plaintiff . . . The question of aggrievement is one of fact to be determined by the trial court." (Citation omitted.) Zoning Board v.Planning Zoning Commission, 27 Conn. App. 297, 301, 605 A.2d 885
(1992). There are two categories of aggrievement — classical aggrievement and statutory aggrievement. See Honan v. Greene,37 Conn. App. 137, 144, 655 A.2d 274 (1995). Hardy claims that both categories of aggrievement are applicable here.
 A Classical Aggrievement
"To be [a classically] aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specifically and injuriously affected as to property or other legal rights." Smith v. Planning Zoning Board, 203 Conn. 317, 321, CT Page 5940524 A.2d 1128 (1987). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Northeast Parking,Inc. v. Planning Zoning Commission, 47 Conn. App. 284, 288, 703 A.2d 797
(1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998); see also Hallv. Planning Commission, 181 Conn. 442, 445, 435 A.2d 975 (1980). "It is a well-established principle that mere generalizations and fears . . . do not establish aggrievement." Walls v. Planning Zoning Commission,176 Conn. 475, 478, 408 A.2d 252, 979).
As previously stated, classical aggrievement first requires that an identifiable legal interest has been adversely affected. The amendment at issue here only effects subdividable land, a limited amount of the total property in the town and, as explained further below, the amendment most significantly affects the larger tracts of subdividable land. Hardy is the owner of a large tract of subdividable land that is covered by the amendment and, therefore, under existing case law, it has an identifiable legal interest sufficient to satisfy the first prong of the classical aggrievement test. See Timber Trails Corp. v. Planning ZoningCommission, 222 Conn. 374, 376 n. 3, 610 A.2d 617 (1992); Summ v. ZoningCommission, 150 Conn. 79, 83-84, 186 A.2d 160 (1962); Lewis v. Planning Zoning Commission, 62 Conn. App. 284, 290-292, ___ A.2d ___ (2001).
The commission argues that Hardy does not satisfy the first part of the classical aggrievement test because the subdivision regulation affects all subdividable land in the town, and, therefore, no particular area or property is affected. The Appellate Court in Lewis v. Planning ZoningCommission, supra, 62 Conn. App. 292-293, considered and rejected such an argument under facts similar to those presented here. "Classical aggrievement does not require . . . that a plaintiff be the only person affected by the adverse decision or even that the plaintiff be among a small group of affected persons." Id.
The consideration of the second prong of the classical aggrievement test — whether the amendment has specially and injuriously affected the plaintiffs' property interests — requires the court to make additional findings. In support of their position that they are aggrieved and have standing to maintain these actions, the plaintiffs introduced testimony from an expert, real estate appraiser, Ralph Bowley.[5]
Bowley conducted an evaluation of the Hardy parcel specifically in order to determine whether this parcel has been adversely affected by the amended regulation. (See Exhibit 8, Bowley Moore Appraisal Company report dated February 26, 2000.) In summary, Bowley testified that the amended regulation would impact all large, undivided parcels in Southbury of four acres or more. Specifically in regard to the Hardy property, Bowley testified that, in his opinion, the amended regulation would result in CT Page 5941 the loss of four building lots, which, in turn, would result in the total monetary loss to Hardy of approximately $223,200. He also testified that the loss of these lots would reduce the standard loan-to-value ratio used by lenders and this in turn would reduce the size of a mortgage loan that a bank would be willing to issue for the property.
On cross-examination, Bowley was asked whether his opinion was affected or would change by the fact that Hardy had not yet applied to subdivide its property or that the commission has the discretion to deviate from the 15% requirement if any such application were filed. Bowley answered in the negative. He testified that his opinion that the amended regulation adversely affected the market value of the Hardy property remained the same and was not made speculative by these considerations. Bowley reasoned that because the commission has consistently applied the 10% open space requirement to new subdivisions over the past two years, it was reasonable to expect the commission to do the same when applying the new 15% open space requirement. According to Bowley, his research identified that over the last two years, the commission refrained from imposing the 10% open space requirement in only one instance and, even in this instance, the commission provided that the open space requirement would be applied to future development of this particular lot.
The court questions whether the Hardy property has actually lost $223,200 in value as a result of the regulation amendment. Such a definitive finding would impermissibly presuppose how the commission would exercise its discretion if and when Hardy files a subdivision application. As previously stated, the commission has the discretion to waive the 15% open space requirement if certain factors exist. Although it may be expected that the agency will apply the regulation in the future in a manner similar to its application in the past, the regulation's future application is simply too contingent for the court to make such definitive or conclusive assumptions, especially since this is a new regulation that the commission may view differently.
On the other hand, the court rejects the commission's position that the amended regulation has had no legally sufficient impact on Hardy's property to support a finding of aggrievement. Assuming that the commission is correct and the precise extent or amount of the impact cannot be determined on this record in the absence of an actual application acted on by the commission, the unclear nature of the amount of the impact does not dictate the conclusion that there has not been any adverse impact on the market value which surpasses mere generalizations and fears. See generally Walls v. Planning Zoning Commission, supra,176 Conn. 478. An exact calculation of harm has never been the litmus test for finding either aggrievement or standing. "Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally CT Page 5942 protected interest." Lewis v. Planning Zoning Commission, supra,62 Conn. App. 288.
The court credits Bowley's testimony at least to find that to some real extent, the amended regulation adversely impacts the market values of the plaintiff's properties. One standard for determining market value is what a disinterested, good faith purchaser would offer to pay for the property. Such a purchaser looking to buy this land and to subdivide it in order to maximize its best use, is now faced with a regulation that diminishes the number of profitable lots that can be developed and sold,unless the commission can be convinced to vary the open space requirement during the application process. Thus it is reasonable to conclude that the amended regulation will negatively influence the price that a purchaser will be willing to pay for the property. Any effort and cost necessary to persuade the commission that a deviation from the 15% open space requirement is justified, as well as the risk and potential financial consequences of failure, are sufficiently real to allow the court to conclude that the amended regulation adversely affects the market values of Hardy's property.
Consequently, the court finds that Hardy has established evidence of a special, adverse impact to its property interests caused by the amended regulation that is more than a generalized fear that the regulation will possibly affect it or restrict the future development of its land. The commission's argument to the contrary based on Hardy's failure to file a subdivision application is rejected. See Timber Trails Corp. v. Planning Zoning Commission, supra, 222 Conn. 374; Lewis v. Planning ZoningCommission, supra, 62 Conn. App. 293-296.
 B Statutory Aggrievement
Statutory aggrievement is broader than classical in that "statutory aggrievement exists by legislative fiat [and] grants appellants standing by virtue of particular legislation, rather than by judicial analysis of the particular facts of the case." (Internal quotation marks omitted.)Cole v. Planning Zoning Commission, 30 Conn. App. 511, 514-15,620 A.2d 1324 (1993), aff'd on remand, 40 Conn. App. 501, 671 A.2d 844
(1996). "The plaintiff can demonstrate statutory aggrievement pursuant to [General Statutes] § 8-8 (a)(1) if [it] can demonstrate that [its] property abuts or is within 100 feet of any portion of the land involved in the decision of the commission." (Internal quotation marks omitted.)McNally v. Zoning Commission, 225 Conn. 1, 6, 621 A.2d 279 (1993).
Little discussion is necessary on the issue of statutory aggrievement in light of this court's conclusion that Hardy is classically aggrieved. CT Page 5943 Hardy, owning land within the area affected by the amended regulation, is statutorily aggrieved and has standing to maintain an administrative appeal from the commission's decision to amend the open space regulation.Lewis v. Planning Zoning Commission, supra, 62 Conn. App. 296-298; Colev. Planning Zoning Commission, supra, 30 Conn. App. 514-15.
 C Standing
Preliminarily, the court notes that while our Supreme Court has held that a general challenge to the validity of a regulation may be made through a direct administrative appeal as filed by Hardy (see StaffordHiggins Industries, Inc. v. Norwalk, 245 Conn. 551, 582, 715 A.2d 46
(1998)), a declaratory judgment action is also a proper vehicle by which to challenge an amendment to a subdivision regulation. See Bombero v.Planning Zoning Commission, 218 Conn. 737, 742, 591 A.2d 390 (1991) (a general attack on the validity of a regulation should be brought by way of a declaratory judgment action because it allows other interested property owners to intervene and be heard); see also Aaron v. ConservationCommission, 178 Conn. 173, 178, 422 A.2d 290 (1979), appeal on other grounds after remand, 183 Conn. 532, 441 A.2d 30 (1981) ("declaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency"); Bombero v. Planning Zoning Commission,40 Conn. App. 75, 81, 669 A.2d 598 (1996) ("[a] declaratory judgment action may be used to determine the constitutionality of a particular statute or regulation").
"One great purpose [of a declaratory judgment action] is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits. . . . [I]t is sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening. Even if the right claimed . . . is a contingent one, its present determination may well serve a very real practical need of the parties for guidance in their future conduct." (Emphasis omitted; internal quotation marks omitted.) Bombero v. Planning ZoningCommission, supra, 40 Conn. App. 79.
While a declaratory judgment action may be an appropriate vehicle, there is still the fundamental requirement that in order to attack the constitutionality of regulations, the plaintiffs must demonstrate that they have standing. "A party pursuing declaratory relief must . . . CT Page 5944 demonstrate, as in ordinary actions, ajusticiable right in the controversy sought to be resolved, that is, contract, property or personal rights . . . as such will be affected by the [court's] decision. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . (Citations omitted; internal quotation marks omitted.) Steeneck v. University ofBridgeport, 235 Conn. 572, 579, 668 A.2d 688
(1995).
Practice Book § 17-55 governs the issuance of declaratory judgments and requires that each party have "an interest legal or equitable by reason of danger or loss or of uncertainty as to the party's rights or other jural relations . . . [and] an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties. . . ." Practice Book § 17-55(1) and (2).
The commission argues that the plaintiffs do not satisfy the first prong for standing under § 17-55 (1). The commission contends that the plaintiffs in actuality have no interests adverse to those of the commission because the amendment does not affect any one property, and therefore, the plaintiffs' harms are speculative. The plaintiffs argue that they meet the first prong of § 17-55 (1) because they are property owners of significant acreage within the affected area and the amendment as applied to their premises reduces the number of building lots that could have been obtained prior to the amendment. Thus, the plaintiffs argue that the amendment adversely affects the fair market value of their premises at the present time and this loss creates a sufficient legal or equitable interest to satisfy § 17-55 (1).
The first prong of the standard for standing pursuant to § 17-55 (1) is similar to the standard for classical aggrievement for an administrative appeal previously discussed. See generally Lewis v.Planning Zoning Commission, supra, 62 Conn. App. 294 n. 10 ("[a] declaratory judgment action provides the setting for a lesser interest sufficient to establish classical aggrievement"). In light of the above findings regarding classical aggrievement, the court concludes that the plaintiffs satisfy the first prong of § 17-55 (1). Hardy has proven that it is classically aggrieved. The other plaintiffs in the declaratory judgment action are, like Hardy, owners of large tracts of property within Southbury capable of subdivision and, therefore, would be similarly affected as Hardy by the amendments in the subdivision regulation. The plaintiffs' expert real estate appraiser, Bowley, testified that the Dicks property of 125 acres, the Louder property of 196 acres and the Manville property of 86 acres would have the same CT Page 5945 general effect of loss as the Hardy property under the increase of the five percent reservation pursuant to the amended subdivision regulation. As discussed previously, the unclear nature of the monetary amount of the impact on the plaintiffs does not eliminate the fact that there has been an adverse effect on market value. Accordingly, the plaintiffs have a legal or equitable interest through loss.
The commission further argues that there is no actual controversy between the parties as the commission has the discretion to deviate from the 15% requirement if any such application were filed. required by § 17-55 (2) because the plaintiffs have not yet submitted subdivision applications and the commission has not taken action under the amendment. The plaintiffs argue that they meet the second prong of § 17-55 (2) because there is a substantial issue in dispute as their premises lie within the zone to which the amendment applies and the legality of the amended subdivision regulation is a bona fide issue of dispute between the parties.
The court agrees with the plaintiffs. The plaintiffs have raised a substantial, disputed issue sufficient to meet the second prong of standing. They have challenged the legality of an amended regulation affecting land that they own in order to have their rights regarding the regulation resolved. "The provision [of Practice Book § 390 (now § 17-55 (2))] that there must be an issue in dispute or an uncertainty of legal relations which requires settlement between the parties means no more than that there must appear a sufficient practical need for the determination of the matter." (Internal quotation marks omitted.) Bombero v. Planning Zoning Commission, supra, 40 Conn. App. 79. "The fact that the [plaintiffs own] property that can be subdivided, which is clearly within the purview of the zoning regulation, coupled with the [plaintiffs'] general attack on the legislative enactment of the regulation, based primarily on constitutional . . . grounds, and the language of Bombero v. Planning Zoning Commission, supra, 218 Conn. 745, suggesting that a declaratory judgment action was the proper vehicle to raise [their] constitutional challenge to the regulation in question, constitutes sufficient aggrievement for the [plaintiffs] to seek declaratory relief." Bombero v. Planning Zoning Commission, supra,40 Conn. App. 84. Therefore, the plaintiffs have standing to bring the declaratory judgment action.
 II A
Scope of Review
"In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in its "legislative' or CT Page 5946 "administrative' capacity." Kaufman v. Zoning Commission, 232 Conn. 122,150, 653 A.2d 798 (1995). "The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . Acting in such legislative capacity, the local [zoning] board is free to amend [or to refuse to amend] its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for [or the undesirability of] a change. Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. . . ." (Citations omitted; internal quotation marks omitted.) Id. "In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71,80, 629 A.2d 1089, cert. denied, 510 U.S. 1164, 114 S.Ct. 1190,127 L.Ed.2d 540 (1994). "[A] zoning commission acts in its legislative capacity when adopting new regulations or rezoning property." Burnham v.Planning Zoning Commission, 189 Conn. 261, 265, 455 A.2d 339 (1983). Thus, "conclusions reached by the Commission must be upheld by the trial court if they are reasonably supported by the record." Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 206, 658 A.2d 559 (1995).
 B Statutory Authority for the Open Space Regulation
The plaintiffs' first argument is that the commission's adoption of the amended regulation exceeds the commissions' authority under § 8-25 of the General Statutes. This statute provides, in relevant part, "[s]uch regulations [covering the subdivision of land] shall also provide that the commission may require the provision of open spaces, parks and playgrounds when, and in places deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. Such regulations may, with the approval of the commission, authorize the applicant to pay a fee to the municipality or pay a fee to the municipality and transfer land to the municipality in lieu of any requirement to provide open spaces. Such payment or combination of payment and the fair market value of land transferred shall be equal to not more than ten per cent of the fair market value of the land to be subdivided prior to the approval of the subdivision." § 8-25. CT Page 5947
As stated above, § 8-25 provides that the subdivision regulations may allow an applicant to pay a fee to the municipality in lieu of complying with an open space requirement in an amount not to exceed 10% of the fair market value of the property. The plaintiff's reason that because the fee cannot exceed 10% of the property's fair market value, it must be presumed that the legislature intended 10% to be the maximum area of a subdivision that the commission may require to be dedicated for open space. Based on this reasoning, the plaintiffs argue that the 15% open space dedication under the amended regulation exceeds this 10% ceiling and is beyond the statutory mandates of § 8-25.
The plaintiffs' creative interpretation of § 8-25 finds no support in the statute itself. Indeed, the plaintiffs' position would require the court to rewrite the statute and add language that simply is not there. The plaintiffs are correct that the statute provides that a fee not to exceed 10% of the property's market value may be paid in lieu of the open space requirement, but the plain words of the statute do not place any restrictions on the size of the open space requirement itself. The court agrees with the commission, that if the legislature intended to impose such a restriction it could have done so expressly.
The plaintiffs are correct that the commission does not have unfettered and unlimited discretion to create open space requirements of any size whatsoever, but it does not follow that the extent of the commission's authority must therefore be implicitly restricted to a 10% limitation under the statute. In short, although the commission cannot act unreasonably, arbitrarily, illegally or in abuse of its discretion; seeSmith v. Zoning Board of Appeals, supra, 227 Conn. 80; the commission is not precluded under the provisions of § 8-25 from acting within the reasonable exercise of its authority to establish an open space dedication exceeding 10% of a subdivision's total acreage. Whether this percentage is less than or more than 10%, under § 8-25, the fee that may be paid in lieu of compliance cannot exceed 10% of market value.
The plaintiffs' alternative argument that the amended regulation creates a "tax" not authorized by § 8-25 is a position expressly considered and rejected by our Supreme Court in Aunt Hack Ridge Estates,Inc. v. Planning Commission, 160 Conn. 109, 119, 273 A.2d 880 (1970).
 C Constitutionality and Reasonableness of the Open Space Regulation
The plaintiff's claim that the amended open space regulation constitutes an unlawful taking of property without just compensation in violation of the fifth amendment to the United States constitution (made CT Page 5948 applicable to the states through the fourteenth amendment) and of article first, § 11, of the constitution of Connecticut. The plaintiffs base this claim on the argument that the regulation does not satisfy the "rough proportionality" test established by the United States Supreme Court in Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309,129 L.Ed.2d 304 (1994). The plaintiffs contend that this test requires the commission to make specific findings that the 15% open space requirement bears a sufficient relationship to the projected impact to proposed subdivisions and that the commission made no such findings before amending the subdivision regulation. Upon this same reasoning, the plaintiffs further insist that the commission acted unreasonably and abused its discretion in enacting the amendment.
In Dolan the commission granted the plaintiff's application for a building permit, subject to two conditions. The conditions required that the plaintiff dedicate, by deed to the city, land to be used for a greenway for recreational visitors along a creek to minimize flooding and land to be used for a recreational, bicycle pathway to relieve traffic congestion. See Dolan v. City of Tigard, supra, 512 U.S. 379-80. The United States Supreme Court held that in order for these conditions to withstand constitutional challenge, an essential nexus must exist between a legitimate state interest and the permit condition, and if so, the conditions demanded by the permit must bear a required relationship to the projected impact of the proposed development. See Dolan v. City ofTigard, supra, 512 U.S. 386. Although the Court found that the conditions were sufficiently connected to legitimate public purposes (id., 388), the Court concluded that the zoning commission had failed to make sufficient individualized findings to explain how the precise conditions being imposed were designed to advance these public purposes. Id., 389-90. The Court characterized this need for individualized findings as a "rough proportionality test." Id., 391.
Consequently, under Dolan, in cases where a zoning agency acts in its adjudicative capacity and conditions approval of a zoning or building application on the applicant's granting of a public dedication, the agency "must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." Dolan v. City of Tigard, supra, 512 U.S. 391.
The plaintiffs' argument that the commission is required to satisfy the rough proportionality test from Dolan is misplaced because, as the plaintiffs concede, the commission acts in a legislative capacity when it amends its regulations, not in its adjudicative capacity. See Pierrepontv. Zoning Commission, 154 Conn. 463, 468, 226 A.2d 659 (1967). When an administrative regulation enacted by an agency through is legislative function is attacked as being invalid on its face, the regulation enjoys CT Page 5949 a presumption of constitutionality and the burden rests on the party challenging the regulation to prove its illegality. See Dolan v. City ofTigard supra, 512 U.S. 391 n. 8 ("in evaluating most generally applicable zoning regulations, the burden properly rests on the party challenging the regulation to prove that it constitutes an arbitrary regulation of property rights"); Aunt Hack Ridge Estates, Inc. v. Planning Commission,
supra, 160 Conn. 117 ("[t]o constitute a valid exercise of police power, both t's legislation and the regulation must, of course, have a rational relation to the public welfare and must be reasonable and impartial"); see generally Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138,65 L.Ed.2d 106 (1980); Village of Euclid v. Ambler Realty Co., 272 U.S. 365,47 S.Ct. 114, 71 L.Ed.2d 303 (1926).
The leading Connecticut case on the legality of open space requirements is our Supreme Court's decision in Aunt Hack, and contrary to the plaintiffs' view, this case has not been undermined by the holding ofDolan in cases involving the exercise of an agency's legislative functions. "The test which has been generally applied in determining whether a requirement that a developer set aside land for parks and playgrounds as a prerequisite to the approval of a subdivision plan is whether the burden cast upon the subdivider is specifically and uniquely attributable to his own activity. Where the requirement is uniquely attributable to the subdivider's activity, it has been held to be a permissible exercise of the police power." Aunt Hack Ridge Estates, Inc.v. Planning Commission, supra, 160 Conn. 117-18. "Engaging in the activity is left to its own choice. When it undertakes to subdivide, the population of the area is necessarily increased and the need for open space for its people becomes a public one. Moreover, when it chooses to subdivide the land, the open space requirement renders the lots offered for sale more attractive and desirable to purchasers, a circumstance of value to the seller." Id., 119; see also Agins v. Tiburon, supra,447 U.S. 255, 260 (a zoning regulation effects a taking if the ordinance does not substantially advance "legitimate state interests or denies an owner economically viable use of his land).
Within the framework of Aunt Hack the plaintiffs do not seriously contend that the commission's adoption of the amended regulation is an excessive or unconstitutional exercise of the commission's police power, except in their more narrow claim that the mere increase of the open space requirement from 10% to 15% is unreasonable and constitutes an unconstitutional taking of property for a public purpose without just compensation. The court, however, cannot conclude that this regulation's 15% open space requirement is so large or extreme that it is unconstitutional on its face, especially when the commission is not required to apply the requirement strictly in every case. See generallyAgins v. Tiburon, supra, 447 U.S. 255. In Aunt Hack, our Supreme Court CT Page 5950 explained in response to the confiscation argument made there, that "[b]asically. . . . the complaint is that the plaintiff should be able to assert an individual interest in filling the entire [or, in the present case, a larger] area with housing as superior to the public interest in maintaining a more healthful open space environment. For the reasons already discussed, the public welfare must be paramount." Aunt Hack RidgeEstates, Inc. v. Planning Commission, supra, 160 Conn. 119.
Moreover, it must be emphasized that none of the plaintiffs have actually filed applications to subdivide their land. The plaintiffs contend that the open space regulation constitutes a per se or facially offensive violation of their rights and not a violation based on any specific application of the regulation to their land. Under the regulation, the commission may deviate from or completely waive the open space requirement. Thus, the full or actual impact of the regulation on the plaintiffs' land is undetermined, and the law is well-established that the "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." (Internal quotation marks omitted.)Dolan v. City of Tigard, supra, 512 U.S. 384; accord Aunt Hack RidgeEstates, Inc. v. Planning Commission, supra, 160 Conn. 117.
The courts have upheld the constitutionality of fairly significant impacts on private property as part of the government's regulatory or preparatory functions. See, e.g., Santini v. Connecticut Hazardous WasteManagement SVC, 251 Conn. 121, 138-139, 739 A.2d 680 (1999), cert. denied, 530 U.S. 1225, 120 S.Ct. 2238, 147 L.Ed.2d 266 (2000). Additionally, although a court may consider whether the mere enactment of a rule constitutes a taking; see Agins v. Tiburon, supra, 447 U.S. 260-62; courts have also been cautioned against the disposition of confiscation claims in the absence of an actual application of the contested rule to the property in question: "Because what constitutes a taking is difficult to define and what amount is just compensation is difficult to calculate, a court, in it proper circumstances, is well advised to stay its hand to allow for political choices and settlements that are outside of the judicial competence. It is for the town . . . in the first instance to decide whether to exercise the police power in order to reach an accommodation with the plaintiffs in their desire to subdivide their properties or, alternatively, to deny the plaintiffs all subdivision rights and pay them compensation . . . Until specific subdivision proposals are submitted to the town zoning authorities, these plaintiffs have not established that they have been deprived of the reasonable and proper use of their properties." (Citation omitted.) Luf v. Southbury,188 Conn. 336, 353-54, 449 A.2d 1001 (1982).
 CONCLUSION CT Page 5951
Therefore, for all the foregoing reasons, in the matter of Hardy FarmLimited Partnership v. Southbury Planning Commission, Docket No. CV99-0363908, the appeal is denied; and in the matter of Hardy FarmLimited Partnership v. Southbury Planning Commission, Docket No. CV99-0364838, judgement shall enter in favor of the defendants.
So ordered this 4th day of May 2001.
Stevens, J.