[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed this appeal from the denial by the Town of Kent Planning and Zoning Commission (the commission) of a subdivision application filed by the plaintiff. On August 12, 1999, the commission issued a decision denying the plaintiff's application for three reasons discussed below, after which the plaintiff filed a timely appeal to the Superior Court. On March 27, 2000, the court held a trial of this case, which was followed by a view of the subject property on March 31 and submission of post-trial briefs on April 7, 2000. For the reasons stated below, the court finds the plaintiff to be aggrieved and agrees with his appeal that the second and third grounds for the commission's decision improperly relied on evidence received after the public hearing, but the court finds no basis in law or fact to overturn the first reason for the commission's decision. Accordingly, the court dismisses the appeal.
 I — Facts of the Case
The plaintiff owns 118 acres of land in Kent (hereafter, the subject property) which he sought to re-subdivide into six lots. The subject property is steep, hilly, wooded terrain that occupies both sides of a ridge visible from various places in the Town of Kent. On April 1, 1999, the plaintiff filed an application for subdivision approval seeking to re-subdivide this property into six lots. After site walks by commission members, issuance of an inland wetlands permit, and approval of proposed driveway entrances from state highways by the department of CT Page 10819 transportation, the commission held a public hearing on May 13, 1999. The commission recessed the hearing that day and continued it to June 10th, when the hearing was concluded.
After the public hearing, the commission asked professional engineer Bart Clark to review and comment on the plaintiff's subdivision application.[1] At the commission's monthly meeting on July 8, 1999, counsel for the plaintiff objected to Clark's review on the grounds that "the hearing was closed and how could [the plaintiff's engineer] respond if Mr. Clark did not agree with his plan . . . [T]he Commission is not entitled to receive or hear any new evidence after the hearing was closed." (Return of Record [ROR], Exh. 29, p. 2.)
On July 27, 1999, Clark a wrote a letter to the town's zoning enforcement officer and a memorandum to the commission containing a summary and details of the engineering review he conducted "to determine if the design meets accepted engineering practices and the technical aspects of the Subdivision Regulations." (ROR, Exh. 33, p. 1 of letter.) Clark stated that the application met all zoning requirements concerning area, lot sizes and shapes, but he expressed various concerns including: (a) the proposed layouts of driveways and home sites; (b) steep drainage access and provision of utilities; and (c) lack of any open space included in the subdivision proposal. As a result of these and other concerns, Clark recommended that the commission disapprove the application until the plaintiff had adequately addressed these concerns. See Id.
On August 12, 1999, the commission voted to deny the plaintiff's subdivision application "without prejudice" for three reasons:
 1. The applicant has failed to make adequate provision for open space as allowed under Section 8.25 of the Connecticut General Statutes as amended and Section 3.8 of the Kent Subdivision Regulations.
 2. The application does not comply with Section 3.16.1 of the Kent Subdivision Regulations in the following respects:
 a. The proposed parallel driveways and home sites are unnecessarily disruptive of a natural terrain and existing vegetation, fail to preserve the integrity of the steep slopes and ridge crests, and would unnecessarily and substantially destroy the scenic quality of the ridge and ridge crest. CT Page 10820
 b. The applicant has not proposed any conservation easements, covenants, or restrictions to minimize or eliminate the foregoing problems.
 3. The commission agrees with the comments and concerns expressed in the report from its engineering consultant, Bart Clark, P.E., [i]n his letter to Judith Wick dated July 27, 1999, and the accompanying memorandum of the same date. Those comments and concerns are hereby incorporated into this decision.
(ROR, Exh. 31, pp. 2-3.)
From that denial, the plaintiff filed a timely appeal to the Superior Court. Other facts will be discussed as necessary in the sections that follow.
 II — AGGRIEVEMENT
In any zoning appeal under the general statutes, the plaintiff must first establish that he or she is personally aggrieved by the decision appealed from. From the evidence presented at trial, the court finds that the plaintiff is the owner of the property in question and the party that sought subdivision approval. Under General Statutes § 8-8 (a)(1),[2]
he is statutorily aggrieved from the commission's denial of his subdivision application. Winchester Woods Associates v. Planning andZoning Commission of Town of Madison, 219 Conn. 303, 308, 592 A.2d 953
(1991); Huck v. Inland Wetlands and Watercourses Agency of Town ofGreenwich, 203 Conn. 525, 530, 525 A.2d 940 (1987).
 III — Standard of Review
The standard for reviewing the denial of a zoning application is well established. "In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has. acted in its `legislative' or `administrative' capacity." Kaufman v. Zoning Commission, 232 Conn. 122,150, 653 A.2d 798 (1995). "In the context of review of subdivision applications, [p]roceedings before planning and zoning commissions are classified as administrative." (Brackets in original; internal quotation marks omitted; citations omitted.) Property Group, Inc. v. Planning Zoning Commission, 226 Conn. 684, 696, 628 A.2d 1277 (1993). The standard of review for an administrative decision on a subdivision application, as here, is whether that decision is illegal, arbitrary, or an abuse of discretion. Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654,427 A.2d 1346 (1980).
CT Page 10821 Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached.
Property Group, Inc. v. Planning Zoning Commission, supra,226 Conn, 697. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiff's." Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988).
In reviewing subdivision proposals, a planning commission's function is limited to determining "whether [an] applicant's proposed use is one [that] satisfies the standards set forth in the, regulations and statutes." Kaufman v. Zoning Commission, supra, 232 Conn. 150. When an administrative agency denies an application and gives reasons for its action, the question on appeal is whether the evidence in the record reasonably supports the agency's action. "Courts are not to substitute their judgment for that of the board, and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Citations omitted.) Whittakerv. Zoning Board of Appeals, supra, 179 Conn. 654. The trial court cannot reverse the agency's decision on factual findings if there is substantial evidence in the record to support the agency's findings and conclusions.Fraenza v. Keeney, 43 Conn. Sup. 386, 391, 655 A.2d 1113 (1994), aff'd,232 Conn. 401, 655 A.2d 1112 (1995). On legal questions, however, the court's review is plenary and is not bound by the opinion of the local agency. Danseyar v. Zoning Board of Appeals, 164 Conn. 325, 329,321 A.2d 474 (1973).
 IV — ISSUES PRESENTED
The commission stated three reasons for denying the plaintiff's subdivision request: (1) that the subdivision application did not provide for open spaces; (2) that the parallel driveways and home sites proposed in the application did not, for several stated reasons, comply with the § 3.16.1 of the town's subdivision regulations; and (3) various reasons stated by the consulting engineer. The court must sustain the decision of the commission "if even one of the stated reasons is sufficient to support it." Property Group, Inc. v. Planning ZoningCommission, supra, 226 Conn. 697; see also Primerica v. Planning ZoningCommission, 211 Conn. 85, 96, 558 A.2d 646 (1989); Huck v. InlandWetlands Watercourses Agency, supra, 203 Conn. 539-40. Accordingly, the CT Page 10822 court will consider the three reasons in turn.
 A — OPEN SPACES
Section 8-25 (a) of the General Statutes authorizes allows a town planning and zoning commission to establish regulations requiring proposed subdivisions to include up to ten per cent of the land for open spaces.[4] Accordingly, § 3.8 of the subdivision regulations of the Town of Kent (regulations) states as follows:
 PUBLIC OPEN SPACE. The Commission may require the provision of open spaces, parks, and playgrounds when, and in places, deemed proper by the Commission, which open spaces, parks and playgrounds shall be shown on the Subdivision Plan. In lieu thereof, the Commission may require the payment of a fee in accordance with Section 3.8.6.
(Supplemental ROR, Exh. 46, Reg. 3.8.)
There is no dispute here that the plaintiff's subdivision application did not include any such open space. The plaintiff's appeal essentially raises three claims as to why the commission's denial for failure to provide open spaces is faulty in this case. First, the plaintiff maintains that the commission, having failed, either during the application process or as part of its actual decision on the subdivision application, to require a specific amount of open space at a particular location within the proposed subdivision, waived its right to demand open space, or is estopped from doing so now. Secondly, the plaintiff raises a number of claims as to why an exaction of open space on this subdivision application is unconstitutional. Finally, the plaintiff argues that the language of the regulations preclude its action here.
1. The plaintiff claims that the commission waived its right to deny the application for not providing open space in the proposed subdivision by failing to designate a specific exaction of open space. Under this theory, a planning commission could never deny a subdivision application for failure to provide open space; rather, when open space is an issue, it must instead always designate the specific amount and location of open space that the commission deems proper for open space and conditionally approve the subdivision proposal contingent on the developer's acceptance of that open space designation.
The plaintiff correctly notes that record shows that he repeatedly asked the commission during the application process whether open space would be required or if the commission would waive the open space CT Page 10823 requirement. The record never discloses any answer by the commission to this inquiry until it issued its decision denying the subdivision application for failure to include open space. The plaintiff further notes, correctly as well, that the regulations do not mandate the provision of open space. Instead, whether to require open space is a discretionary decision vested in the commission. The commission "may"[5]
require open spaces "when, and in places, deemed proper by the commission." See Paige v. Town Planning Zoning Commission,35 Conn. App. 646, 661, 646 A.2d 277 (1994), rev'd on other grounds,235 Conn. 448 (1995) (holding that the language "deemed proper by the "Commission" vests discretion in a planning and zoning board in determining whether to require open space); see also Belcher v. Planningand Zoning Commission, Superior Court, judicial district of Rockville, Docket No. 558178 (Jun. 3, 1997, Rittenband, J.) (19 Conn.L.Rptr. 505).
Finally, the plaintiff asserts, again correctly, that the commission could have conditionally approved the subdivision application by designating the specific amount and location of open space required.Moscowitz v. Planning Zoning Commission, 16 Conn. App. 303, 309,547 A.2d 569 (1988); Bridgeport Hydraulic v. Planning ZoningCommission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 038829 (Dec. 6, 1993, Flynn, J.).
However accurate the plaintiff's recitation of those legal principles, their application here does not mean that the commission's decision to deny the application for not providing open space was improper. While the plaintiff repeatedly asked the commission during the application process to define or waive its open space requirement, the commission never responded to those inquiries. (See, e.g., ROR, Exh. 3, p. 4; ROR, Exh. 15, p. 2.) As the minutes of the commission's meeting at which it voted to deny the application show, there was no consensus on the open space question among commission members. (ROR, Exh. 31, p. 3.) Until the time of the vote, one commission member continued to advocate that no open space should be required. Id. In view of such disagreement among commission members on the open space question, it could hardly be deemed improper for the commission to defer a final resolution of that question until conclusion of all discussion on the question and a formal vote on it as part of the decision on the application.
The plaintiff claims, however, that the permissive nature of the language in § 3.8 of the regulations, particularly the clause "when, and in places, deemed proper by the Commission," imposes the responsibility for imposing open space on the commission. Under this view, "the Commission, as was its prerogative, chose not to require any public space and it is now bound by that decision. As the applicant was CT Page 10824 under no obligation to voluntarily offer open space, the Commission was without authority to deny the application. . . ." (Plaintiff's Pretrial Brief, p. 11.)
The plaintiff's reliance on ME Land Group. v. Planning ZoningCommission, Superior Court, judicial district of Danbury, Docket No. 326632 (May 8, 1998, Radcliffe, J.) (22 Conn.L.Rptr. 143), in support of this proposition is misplaced. In that case, the local subdivision regulations expressly mandated the procedure that the plaintiff is asking this court to graft onto regulations not containing a similar requirement. The subdivision regulation in that case, unlike here, specifically required the local commission to designate a different or larger parcel if it rejected the developer's open space proposal:
 The location and size [of open space] shall be initially proposed by the subdivider, but the commission, in acting on an application, may designate a different or larger area for said open space within the limits of this section.
ME Land Group v. Planning Zoning Commission, supra,22 Conn.L.Rptr. 143. The plaintiff in ME submitted a subdivision application setting aside twenty-six per cent of the parcel, "[a]creage well in excess of the 10 percent mandated by [the local subdivision regulation] for open space purposes." Id. The local planning board denied the application for "the failure of the application to meet any purpose for open space articulated in the subdivision regulations or the plan of development." Since the plaintiff's application met the terms of the subdivision regulation and the commission did not follow the procedure dictated by the local regulation, the court found that the commission had acted illegally.
The regulations do not, however, contain such a mandate. In a different but related context, the Connecticut Supreme Court has held that inland wetland commissions, although having discretion, as did the commission here, to modify and approve applications conditionally, are nonetheless also entitled to deny an inland wetlands permit application without describing potential alternatives or prescribing a precise method for correcting deficiencies in the application. Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 553-54. In the inland wetlands context, moreover, the local commission may not, under General Statutes § 22a-41 (b), issue a permit unless it finds that no "feasible and prudent alternative" exists. Even then, inland wetland commissions are not required to specify alternatives to an applicant but may, without designating alternatives, merely accept or reject the application before them. See Shorehaven Golf Club, Inc. v. Water Resources Commission, CT Page 10825146 Conn. 619, 625, 153 A.2d 444 (1959).
This court can see no reason why a planning and zoning commission, in the absence of a specific regulatory mandate to the contrary as in ME, does not have the same discretion. Nothing in the General Statutes, the regulations, or caselaw requires a planning commission to designate the specific open space exaction, as opposed to requiring a subdivision applicant to submit an acceptable open space proposal. Denying a subdivision proposal that does not contain any open space is a legally permissible way for a planning commission to require open space.
The court finds no merit in the plaintiff's claim of waiver or estoppel.[6] "Waiver is the intentional abandonment of a known tight. . . . Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. . . . Intention to relinquish must appear, but acts and conduct inconsistent with intention [not] to [relinquish] . . . are sufficient." SouthbridgeAssoc. v. Garofalo, 53 Conn. App. 11, 20, 728 A.2d 1114 (1999), cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). Equitable estoppel, similarly, "is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed,. . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . . Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted; citations omitted.) Emerick v. Emerick, 28 Conn. App. 794, 802, 613 A.2d 1351
(1992), cert. denied, 224 Conn. 915 (1992).
Contrary to the plaintiff's claims, no acts by the commission affirmatively misled the plaintiff into believing that open space would not be required. Nor did the commission ever expressly waive the open space requirement. At the February 11 preliminary meeting and the May 13th public meeting, the plaintiff asked if open space would be required or waived. The plaintiff asserts that his repeated requests for a waiver of the open space requirement did not mean that he acknowledged the commission's right to require open space. These inquiries surely show, however, the plaintiff's awareness that the commission had not yet decided whether to grant such a waiver. It should have been apparent to the plaintiff that open space was an open issue, from, for example, commission inquiries about open space at the June 10th public hearing and from comments by commission members at the June 10th and July 11th commission meetings. CT Page 10826
In light of the nature of the topography of the subject property here, it was neither unreasonable nor arbitrary for the commission to deny the application without prejudice and instead allow the plaintiff to resubmit its application with a specific open space recommendation, thereby affording the developer of this difficult terrain the opportunity to assess how best to provide open space consistent with his plans for development. Under these circumstances, the commission was under no obligation to specify the exact open space requirements or a particular alternative plan to that submitted by the plaintiff. Instead, the commission could merely deny the application and leave the plaintiff with the burden of proposing a particular open space exaction.
2. The plaintiff's second basis for appealing the open space requirement raises numerous constitutional claims that the condition represented an unconstitutional exaction of property rights.[7] For this challenge he relies on the United States Supreme Court's recent decision in Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309,129 L.Ed.2d 304 (1994), which held that in evaluating whether governmental land use regulations constitute an uncompensated taking of property in violation of the takings clause of fifth amendment to the United States Constitution,[8] as made applicable to the states by thefourteenth amendment:
 we must first determine whether [an] "essential nexus" exists between the "legitimate state interest" and the permit condition exacted by the city. . . . If we find that a nexus exists, we must then decide the required degree of connection between the exactions and the projected impact of the proposed development.
(Citation omitted.) Id., 386.
 The second part of our analysis requires us to determine whether the degree of the exactions demanded by the city's permit conditions bears the required relationship to the projected impact of petitioner's proposed development.
Id., 388.
 We think a term such as "rough proportionality" best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required CT Page 10827 dedication is related both in nature and extent to the impact of the proposed development.
Id., 391.
The plaintiff does not challenge the constitutionality of a town's general right to require open space, a question already resolved by our Supreme Court in Aunt Hack Ridge Estates, Inc. v. Planning Commission,160 Conn. 109, 115-120, 273 A.2d 880 (1970):
 The test which has been generally applied in determining whether a requirement that a developer set aside land for parks and playgrounds as a prerequisite to the approval of a subdivision plan is whether the burden cast upon the subdivider is specifically and uniquely attributable to his own activity. Where the requirement is uniquely attributable to the subdivider's activity, it has been held to be a permissible exercise of the police power . . . [A] requirement that the developer dedicate open space to the public is valid on the ground that the burden imposed on him is uniquely attributable to his own activity because the increase in population in the area which will result from that activity is productive of the need for open space. . . .
(Citations omitted.) 160 Conn. 109, 117-18, 273 A.2d 880 (1970).
"When it undertakes to subdivide, the population of the area is necessarily increased and the need for open space for its people becomes a public one." Id., 119. While Dolan v. City of Tigard has supplanted the "reasonable relationship" standard of Aunt Hack with the "essential nexus" test, the defendant nowhere claims that the provisions for open space in General Statutes § 8-25 or § 3.8 of the regulations are per se invalid for failing to satisfy either standard.
Instead, the plaintiff challenges the application of an open space requirement to this particular subdivision application. Pointing out that the application proposes a lowdensity (six parcels in a tract of 118 acres) subdivision with substantial areas not occupied by housing or other improvements, the plaintiff asserts that "neither the transcript nor the minutes of the hearing disclose any evidence regarding the need for open space, nor a finding by the commission of the existence of any essential nexus between a `legitimate state interest' in requiring open space for this particular subdivision." The plaintiff thus relies on the second prong of the Dolan v. City of Tigard test — an CT Page 10828 "individualized determination" whether there was a "rough proportionality" between "the exactions demanded" by the open spaces requirement being applied to this subdivision and "the projected impact" of the plaintiff's proposed development.
Although not denying that the Dolan test requires such an individualized determination, the commission argues in response that such a claim is not ripe here, because there has as yet been no specific exaction for open space. The town also claims that the plaintiff did not argue to the commission that the subdivision would impose no burden on the town and should not be allowed to raise this issue for the first time on appeal.
The court agrees with the defendant on both points. It is an cardinal rule of zoning appeals that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. OG Industries, Inc. v. Planning ZoningCommission, 232 Conn. 419, 425, 655 A.2d 1121 (1995). A party need not exhaust an administrative remedy, however, that would be futile or useless. Norwich v. Norwalk Wilbert Vault Co., 208 Conn. 1, 4, 544 A.2d 152
(1988); Concerned Citizens of Sterling v. Town of Sterling, 204 Conn. 551,559-60, 529 A.2d 666 (1987). "[A]n administrative remedy is adequate when it could provide the plaintiff with the relief that it seeks and provide a mechanism for judicial review of the administrative decision." OGIndustries, Inc. v. Planning Zoning Commission, supra,232 Conn. at 426.
Under the exhaustion requirement, a plaintiff must first present factual and legal claims to the administrative agency before making them grounds for appeal:
 A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial.
(Internal citations and quotations omitted.) Dragan v. ConnecticutMedical Examining Board, 223 Conn. 618, 632, 613 A.2d 739 (1992).
The courts have recognized an exception to the exhaustion requirement for constitutional claims, on the theory that local administrative agencies do not have competency to decide the constitutional validity of CT Page 10829 an ordinance. See R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999), § 48.12. p. 467. Such an exception fits within the general category of exceptions to the exhaustion requirement where it would be futile or inadequate to present a claim to the administrative agency, as a local administrative agency could not consider most constitutional arguments. That exception does not apply to constitutional claims such as the one made here, however, where the question is whether a particular exaction for open space is constitutional as applied to the specific situation. Since such a determination is uniquely within the province and competency of a local planning board, it would hardly be futile or inadequate to present such a claim to the commission. The plaintiff himself admits that "this claim could have been made before the commission." (Plaintiff's Supplemental Trial Brief, p. 2.) The balancing of "the exactions demanded" by a requirement of open space in a particular instance to "the projected impact of petitioner's proposed development" is a factual determination that each planning commission must now, since Dolan, make, and one that such local boards are uniquely qualified to undertake by virtue of their knowledge of the demands that each such application will make on a community. The plaintiff's failure to present this claim to the local board for its "individualized determination" deprives the court of subject matter jurisdiction now to hear this claim. Since sustaining the commission's decision to deny the subdivision application without prejudice means that the plaintiff can again present his application to the commission, however, he can make the constitutional claim there for its review and determination.
Moreover, as the commission points out, until a specific amount of open space has been exacted, it is impossible to assess the claim that the exaction required here is not roughly proportional" to the "projected impact" of the plaintiff's proposed development. Thus the constitutional claim presented here is not yet ripe for adjudication.
3. Finally, the plaintiff also claims that the definitions of "open space" and "open space, public" in the regulations prevent the commission from requiring him to provide open space. The crux of this argument is that since the definition of "public open space" in the regulations does not include or refer to the term "open space," the court should find the commission's decision to require open space to be invalid.
Section 2.2 of the regulations defines "open space" as "a space not occupied by a building or other roofed structures the same lot as the principal building or use." (ROR, Exh. 46, Reg. 2.2.) It defines "open space, public" as "[a]ny land in a subdivision proposed for public acceptance by the Town of Kent for park or playground purposes in a location approved by the Kent Planning and Zoning Commission." Id. CT Page 10830
Section 3.8 of the regulations, captioned "Public Open Space," using language virtually identical to that in General Statutes § 8-25 (a) allowing local commissions to require the provision of open space in a subdivision, permits the commission to "require the provision of open spaces, parks, and playgrounds when, and in places, deemed proper by the Commission, which open spaces, parks and playgrounds shall be shown on the Subdivision Plan." (ROR, Exh. 46, Reg. 3.8.)
Section 3.8 must be read together with the definitions of "open space" and "open space public" in the regulations. Taking all three sections of the local subdivision regulations together, they allow the commission to "require the provision of open spaces" (which, by definition in the regulations, means a lot not occupied by a building or other roofed structure) as "Public Open Space," i.e. under the regulation, as "land proposed for public acceptance, for park or playground purposes."
The commission denied the plaintiff's application because the subdivision proposal did not include any provision for "open space as allowed under Section 8.25 of the Connecticut General Statutes as amended and Section 3.8 of the Kent Subdivision Regulations." (ROR, Exh. 31, p. 2.) The references to § 8-25 and § 3.8 make clear that this reason refers to the application's omission of any land set aside as open space for public use purposes as allowed by that statute and regulation. The court therefore finds no basis in the language of the regulations or the wording of the commission's decision upon which to sustain the plaintiff's appeal.
 B — DRIVEWAY AND HOME SITE LOCATIONS
The second reason given by the commission for denying the plaintiff's subdivision application was that proposed driveways and home sites were "unnecessarily disruptive of a natural terrain and existing vegetation, fail to preserve the integrity of the steep slopes and ridge crests, and would unnecessarily and substantially destroy the scenic quality of the ridge and ridge crest," all in violation of regulations captioned "Preservation of Natural Beauty" set forth in § 3.16.1 of the subdivision regulations. (ROR, Exh. 31, p. 2.) Section 3.16.1 provides that "[t]he development of the site shall conserve as much of the natural terrain and existing vegetation as possible, shall preserve sensitive environmental land features such as steep slopes, wetlands and large rock outcroppings, and shall preserve public scenic views and historically significant features." (Supplemental ROR, Exh. 46, Reg. 3.16.1.)
Section 3.16.1 applies, by its own terms, to "the development of the site." The plaintiff maintains that this language restricts its application to improvements in the nature of municipal development, such CT Page 10831 as streets. Yet nothing in the language of that regulation itself or anywhere else in the subdivision regulations so limits its applicability.
The plaintiff nowhere complains in his brief[9] that the aesthetic considerations embodied in § 3.16.1 are unconstitutional or in excess of statutory authority.[10] While it is true, as the plaintiff asserts, that "vague and undefined aesthetic considerations" would not support the exercise of zoning power; (emphasis added) DeMaria v.Planning Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105 (1970); the specific regulation in question, § 3.16.1, could hardly be described as such. To the contrary, the aesthetic interests promoted by the regulation are quite specific, unlike the "[e]xcept in cases of unusual topography or property lines" language in Sonn v. PlanningCommission, 172 Conn. 156, 158, 374 A.2d 159 (1976) (holding that such language gave "broad, almost unfettered, authority to the planning commission, acting administratively, to bow down to expediency rather than serve the public welfare").
The burden of proving that the subdivision regulation in this case is "impermissibly vague as applied to the facts" rests with the plaintiff.Felsman v. Zoning Commission, 31 Conn. App. 674, 681, 626 A.2d 825
(1993). "[I]t is well established that, as a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . ." (Citations omitted; internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 446,586 A.2d 590 (1991).
Common sense must be employed in construing the words of a regulation.Smith v. Zoning Board of Appeals, 227 Conn. 71, 92, 629 A.2d 1089
(1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540
(1994).
 The test of a permissible subdivision regulation is whether "the criteria contained in the commission's regulations are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . . Although some of the standards may be general in their terms, they . . . [must be] reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future CT Page 10832 cases.
(Brackets in original; citations omitted. Sonn v. Planning Commission, supra, 172 Conn. 159-60. The language of § 3.16.1 meets those criteria.
The plaintiff maintains that the commission lacks authority, in determining subdivision approval, to consider driveway design,[11]
grade, or construction criteria,[12] all of which he maintains are exclusively zoning matters and not a proper subject of subdivision regulation. Similarly, he maintains that the commission could not require construction of driveways or the obtaining of driveway permits, as these are within the purview of the zoning board rather than a planning commission. The commission points out that the plaintiff "never claimed during the course of the administrative proceeding that the Commission did not have the right to consider issues regarding the proposed driveway layout." (Defendant's Brief, p. 15.) The court has carefully reviewed the entire record of the proceedings below. There were questions and comments on several occasions by commission members regarding the layout and design of the driveways. All of the discussion below about driveways, however, can be viewed either as simply informational or the sort of general give-and-take that might characterize any proceeding before a lay administrative board. The court finds no indication that any of these comments specifically and reasonably alerted the plaintiff to the possibility that the commission might deny the application because of driveway or home site locations.[13] The court therefore finds no failure on the part of the plaintiff to exhaust its administrative remedies with regard to this claim.
The plaintiff is correct that, in general, driveway specifications and design are zoning matters. From that proposition it does not follow, however, that only the zoning board may consider driveway issues. To the extent that particular driveway locations or designs might affect issues of legitimate concern in the consideration of a subdivision proposal, a planning commission can properly consider those issues.[14] The contrary result, advocated by the plaintiff, would bar the commission from considering issues within its statutory and regulatory authority — whether proposed locations for driveways or home sites would, as required by § 3.16.1, "conserve as much of the natural terrain and existing vegetation as possible, . . . preserve sensitive environmental land features such as steep slopes, wetlands and large rock outcroppings and . . . preserve public scenic views and significant features."
Here, the commission knew that the proposed driveways would require a 100-foot wide, clear cut swath because of the steep nature of the terrain. It knew that because of this steepness proposed driveways could CT Page 10833 not take a straight line course from the point of exiting public roads to the proposed home sites and still comply with zoning regulations permitting a highway grade no steeper than 15%; thus the proposed driveways wound their ways around the hillside to get to the various home sites. Commission members had personally inspected the proposed driveway locations on a site walk.[15]
The plaintiff also claims that the driveway locations were "conceptual" only, and that he never intended to construct the highways as proposed on the subdivision application. Actual building of driveways, he claims, was going to be left to subsequent owners of individual lots after the subdivision was approved. He thus maintains that "a subdivision plan cannot be denied for noncompliance of improvements not proposed or intended to be constructed as part of that application. (Defendant's Post-Trial Brief, p. 19.) Despite his assertion that the driveway locations were conceptual only, the commission was entitled to rely on the cover page of the subdivision application, which said that the subdivision showed the locations of proposed driveways. The court therefore disagrees with the plaintiff's many reasons as to why the commission could not consider driveway and home site location in deciding whether the subdivision proposal complied with the § 3.16.1 of the regulations. Given the terrain of this plot and the consequent steep grades and winding trail of any driveways to be built, it was appropriate for the commission to consider possible driveway location and design issues with respect to their effect on the concerns of § 3.16.1 of the regulations.[16] The court therefore finds no error in the commission having considered these matters.
 C — Illegal Receipt of Evidence
The final ground for appeal is the plaintiff's claim that the commission improperly considered the letter and memorandum from the consulting engineer Clark. While the various factors regarding driveway and homesite location raised valid concerns under § 3.16.1, the court need not consider whether those concerns by themselves would constitute substantial evidence sufficient to sustain the commission's decision, since the plaintiff has not raised, as a ground for appeal, any claim that the administrative record lacks substantial evidence to support the defendant's decision. Those concerns did not stand alone, however, as the basis for the commission's decision that the proposed driveway locations did not meet § 3.16.1 standards.
The record clearly establishes that the commission knew about and relied on the statements of the consulting engineer Clark that alternative access arrangements would better conform to intent of the regulation. Specifically, Clark's letter to the zoning enforcement CT Page 10834 officer stated that "a local road . . . could easily address or minimize concern for the above issues and, in addition provide for a more economical access." (ROR, Exh. 33, p. 2 of letter.) Clark's memorandum to the commission stated "[t]here are alternatives that can better protect the safety of the community while allowing the property to be subdivided." (ROR, Exh. 33, p. 3 of memorandum.)
Zoning enforcement officer Judith Wick had instructed Clark that he could not consider or raise information not contained in the administrative record. (See ROR, Exh. 33, p. 1 of letter and p. 1 of memorandum.) Wick also advised the commission it should not consider Clark's recommendation of a local road because it was "new information" not contained in the record. (ROR, Exh. 32.) This court agrees with the zoning enforcement officer's characterization of Clark's suggestion of a local road as "new information." That there existed, in Clark's opinion, other and better access "alternatives" was also "new," albeit non-specific, information as well. Nevertheless, the commission adopted his comments and concerns without any such reservation and incorporated them into its decision.
A planning or zoning board is entitled to receive technical and professional assistance from board employees or consultants, in executive session. Blaker v. Planning Zoning Commission, 212 Conn. 471, 478,562 A.2d 1093 (1989). "The board, composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise." Spero v. Zoning Board of Appeals, supra, 217 Conn. 444. Two important limitations on using staff or consultant opinion are that: (1) "[b]efore an administrative agency may lawfully rely on material nonrecord facts within its special knowledge and experience or which it has learned through investigation, it must allow a party adversely affected thereby an opportunity to rebut at an appropriate stage in the proceedings"; Connecticut Natural Gas Corporation v. Public UtilitiesControl Authority, 183 Conn. 128, 139 n. 9, 439 A.2d 282 (1981); and (2) "the use of improper evidence requires a remand only if a party has affirmatively shown substantial prejudice." Id., 139. "Reliance on extra-record evidence for important facts demonstrates substantial prejudice." Id., 140.
Since the commission decision denying the subdivision application stated that it knew about and relied on Clark's letter and memorandum, the plaintiff was obviously prejudiced by this evidence. The court therefore agrees with the plaintiff's appeal that the second reason relied upon by the commission to deny the subdivision application cannot stand. Although entitled to consider driveway design and location issues with regard to § 3.16.1 of the regulations, the commission could not consider new, non-record facts in doing so; and having done so, its CT Page 10835 decision on this ground cannot stand.
Ordinarily, the appropriate remedy when a zoning board has considered prejudicial "extra-record evidence" is to remand the case for the party challenging the use of that evidence to have an opportunity to cross-examine its proponent and submit additional evidence to refute the non-record evidence, and for the local board to then redecide the question. See R. Fuller, 9A Connecticut Practice Series, Land Use Law and Practice (1999) § 47.4, p. 448. In view of this court's decision in a previous section sustaining the commission's denial on the open space basis, such a remand would be pointless here. Any error in the commission's decision about the proposed driveway or home site location based on § 3.16.1 issues is thus harmless here and not a basis for overturning the commission's decision. If the plaintiff submits a revised application, as permitted by the denial without prejudice, he will have a full opportunity then to address these concerns.
Clark's letter and memorandum also mentioned other "extra-record" information, such as his statement that drainage computations for certain of the driveways did not meet the needs of the subdivision design (ROR, Exh. 34, memorandum, p. 2) or his recommendation of a central feeder for certain utilities. (Id., p. 3.) For the same reasons as discussed above, the court concludes that the commission improperly considered such new evidence to the plaintiff's prejudice, but such error was harmless here in view of the court's order sustaining the commission's decision.[17]
Accordingly, having sustained the commission's decision on the first reason stated therein, the court dismisses the appeal.
So Ordered.
By the Court Frazzini, J.